IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREA C. MOORE,                    :

    Plaintiff,                  :

v.                                  :        Civil Action No. GLR-11-2638

CHRISTINA LONEY, et al.,            :

    Defendants.                 :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on three pending motions, including Defendants' Motions for Summary Judgment (ECF No. 43) and to Strike Certain Paragraphs of Kevin Gembarosky's Affidavit (ECF No. 51), and Plaintiff's Motion to Strike, or Alternatively, in Limine (ECF No. 47).

Plaintiff Andrea C. Moore brings this action against her former employer, Maryland Department of Health & Mental Hygiene ("DHMH") – Thomas B. Finan Center ("Finan Center"), and several DHMH employees in their individual and official capacities alleging failure to accommodate, retaliation, and wrongful discharge under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 (2012), discrimination under the Rehabilitation Act, 29 U.S.C. § 794(a) (2012), and interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(2) (2012). Included as Defendants are Christina Loney (Finan Center's Personnel Officer); John Cullen (Finan Center's Chief Operating Officer); James Isaac (Director of Rehabilitation and Moore's

supervisor); Harold Young (Chief of DHMH's Employee Relations); and

(current Secretary of DHMH) Joshua Sharfstein (collectively

"Defendants").[1]

The issues have been fully briefed and no hearing is

necessary. <u>See</u> Local Rule 105.6 (D.Md. 2011). For the reasons set

forth below, Moore's Motion to Strike, or Alternatively, in Limine

will be denied. Defendants' Motion to Strike Certain Paragraphs of

Kevin Gembarosky's Affidavit, and Motion for Summary Judgment will

be granted.

## I. BACKGROUND[2]

Finan Center is an inpatient psychiatric hospital located in

Cumberland, Maryland, operated by DHMH. Moore began her position

at Finan Center in November 2006 as an Art Therapist I. Generally,

an Art Therapist "evaluate[s] for, plan[s], implement[s], and

document[s] specific art therapy services for patients who have

acute and chronic psychiatric conditions." (<u>See</u> Defs.' Mot. Summ.

J. ["Summ. J. Mot."] Ex. 5 ["Position Description"], at 2, ECF No.

43-8).

Sometime prior to August 2008, Moore was issued a number of

"letters of counseling" citing performance issues related to her

documentation and record keeping, time management, and absenteeism.

---

[1] Moore also names unidentified John and Jane Doe in her Amended Complaint.

[2] Unless otherwise noted, the following facts are taken from the Amended Complaint and the parties' briefings on the instant motions, and are viewed in the light most favorable to the nonmoving party.

As a result, Moore disclosed that she suffered from a disability caused by head trauma sustained during childhood and requested accommodations including, among others, teleworking, receiving written and oral communication whenever there were changes made to her supervisor's previous instructions, being allowed to take notes during meetings, being allowed more flexibility regarding her work schedule, and intermittent time off.[3]

In response to Moore's request for accommodation, on September 2, 2008, Finan Center requested that Moore provide written documentation from her medical provider supporting her disability and explaining how the requested accommodations would help her perform the essential functions of her position. Sometime in October 2008, Moore provided Finan Center with a nine-year-old psychological examination from a psychologist assessing Moore's need for educational accommodations in college. Finan Center personnel, however, did not accept this psychological examination because it was too old and advised Moore to provide current documentation. Moore inquired about what specific information she

_____

[3] Moore later developed other conditions she qualifies as disabilities. In September 2008, Moore developed mononucleosis, from which she suffered severe and continued fatigue that substantially interfered with her work and sleep patterns. In March 2009, Moore was also diagnosed with interstitial cystits, from which she suffered severely debilitating pain, and underwent four to six weeks of treatment. The condition required her to take medicine, which resulted in difficulty with memory and concentration, interfered with her ability to work and focus, and caused her to over-sleep.

was required to provide but asserts she did not receive any response in this regard.

In March 2009, Loney referred Moore to the State Medical Director ("SMD") for a number of reasons including that Moore asked for reasonable accommodations and Finan Center was seeking a determination of whether she could perform the essential functions of her job. The SMD, Dr. Mike Lyons, referred Moore to a neurologist, Dr. Aaron Noonberg, for an examination. Dr. Noonberg asserted that Moore's "pattern of strength and weaknesses should allow her to perform the essential job duties of her position description. However, she may show inconsistency and some reliability problems particularly along the lines of disorganization and lateness due to her working memory and complex attentional difficulties." (Summ. J. Mot. Ex. 16, at 1, ECF No. 43-19). Neither doctor recommended specific accommodations, however, Dr. Lyons's report noted that Moore would likely benefit from stimulant medication and electronic reminder devices.

In his April 21, 2009 Follow-Up Workability Evaluation, Dr. Lyons noted that Moore suffered from a number of acute medical conditions but hoped some of those conditions had improved such that she could avoid further absenteeism. Based on a review of Moore's examinations and medical records, Dr. Lyons opined that Moore was able to perform the full duties of her position but noted that if Moore's absenteeism did not improve or worsened, she should be referred back to his office "for a final recommendation

regarding her ability to consistently and reliably perform the essential duties of [her] position." (Summ. J. Mot. Ex. 15, at 4, ECF No. 43-18).

Moore was absent from work for the entire period between November 20, 2009, and December 15, 2009. On December 14, 2009, Loney mailed to Moore FMLA information and forms. Moore returned to work on December 16, 2009. The next day, after meeting with Moore, Loney decided to refer Moore back to Dr. Lyons for a follow-up examination to determine if there was any way Moore could "realistically perform her job at any functioning level." (Summ. J. Mot. Ex. 35 ["Jan. 2010 SMD Referral Letter"], at 4, ECF No. 43-38).

In the request for re-evaluation, Loney indicated, among other things, that Moore's absenteeism worsened. Loney cited 118 hours of absence in 2007, 208 hours of absence in 2008, and 411 hours of absence in 2009. Moore reported to Dr. Lyons for a follow-up evaluation on January 7, 2010.

As a result of the evaluation, Dr. Lyons issued a report concluding that Moore was "unable to effectively, consistently, and reliably perform the essential duties of an Art Therapist II,[4] with or without accommodations." (Summ. J. Mot. Ex. 34 ["Second Follow-Up Workability Evaluation"], at 4, ECF No. 43-37). On January 12, 2010, after reviewing Dr. Lyons's report, Cullen and Loney met with

_____

[4] Moore was released from probationary new hire status on August 7, 2007. Upon her release from that status, Moore was promoted to Art Therapist II.

5

Moore and asked her to resign or otherwise be terminated. She was placed on administrative leave for two weeks and given until January 26, 2010, to tender her resignation. Finan Center received and approved Moore's completed FMLA paperwork on January 26, 2010. Moore, however, remained on administrative leave until February 24, 2010, when she was terminated from her employment.

Moore filed her original Complaint with this Court seeking monetary and injunctive relief against Defendants in their official and individual capacities alleging violations of the ADA, violations of Fourteenth Amendment Due Process, and intentional infliction of emotional distress. (ECF No. 1). On December 16, 2011, Moore amended her Complaint alleging Failure to Provide Reasonable Accommodations under Title I of the ADA (Count I); Wrongful Discharge under Title I of the ADA (Count II); Failure to Provide Reasonable Accommodations under Title II of the ADA (Count III); Wrongful Discharge under Title II of the ADA (Count IV); Retaliation under the ADA (Count V); Disability Discrimination under the Rehabilitation Act (Count VI); Violation of Fourteenth Amendment Due Process (Count VII); Interference with Leave under the FMLA (Count VIII);[5] and Retaliation under the FMLA (Count IX). (ECF No. 9). On June 4, 2012, the Court dismissed Count VII from Moore's Amended Complaint. (ECF No. 19).

---

[5] The Amended Complaint refers to both the Due Process claim and the Interference with Leave under the FMLA claim as Count VII. The Court has renumbered the Interference with Leave claim as Count VIII for ease of reference.

Defendants now seek summary judgment in their favor on all remaining counts. Moore filed a response in opposition for summary judgment and a motion to strike, asserting Defendants filed twenty-nine inadmissible exhibits to their motion for summary judgment. (ECF No. 47). Defendants filed a reply to the response (ECF No. 50), and a motion to strike certain paragraphs of Kevin Gembarosky's affidavit that was attached as Exhibit 5 to Moore's opposition.

## II. DISCUSSION

### A. Motions to Strike

The parties have each filed a motion to strike concerning testimony relevant to Defendants' motion for summary judgment. Because the testimony at issue impacts the Court's decision on the motion for summary judgment, the Court will address these motions first.

#### 1. Moore's Motion to Strike

Moore moves to prevent Defendants from admitting exhibits 5-9, 11, 13-16, 18, 20-35, and 43-44 attached to Defendants' Motion for Summary Judgment. Moore argues these exhibits present facts unsupported by admissible evidence and constitute inadmissible hearsay. Moore, however, provides no other evidentiary basis for striking these exhibits beyond hearsay. Because the exhibits either fit into a hearsay exception or are not hearsay, the motion will be denied.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Planmatics, Inc. v. Showers, 137 F.Supp.2d 616, 620 (D.Md. 2001), (quoting United States v. Lis, 120 F.3d 28, 30 (4th Cir. 1997) (emphasis omitted) (internal quotation marks omitted), aff'd, 30 F.App'x 117 (4th Cir. 2002); see also Fed.R.Evid. 801(c). An out-of-court statement is not hearsay unless it is offered to prove the truth of what is asserted. See Dent v. Siegelbaum, No. DKC 08-0886, 2012 WL 718835, at *8 (D.Md. Mar. 5, 2012) ("[O]ut-of-court statements not offered for the truth of the matter asserted are not hearsay and not inadmissible."). Statements offered to show the effect on the listener of the statement, statements that have independent legal significance simply because they were made, regardless of their literal truth or falsity ("legally operative facts"), and statements offered as circumstantial evidence of the declarant's state of mind, or motive, are some instances in which out-of-court declarations are not hearsay. Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 565-66 (D.Md. 2007).

Additionally, there are a number of exceptions to the hearsay rule. As relevant here, statements of the declarant's "then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)" are admissible as an exception to the hearsay rule pursuant to Rule 803(3). Fed.R.Evid. 803(3).

Exhibits 5-9, 18, 20-29, 30-32, and 44 are offered to establish facts with independent legal significance. Because these documents are not offered for their truth, they are not hearsay and the Court may consider them for any relevant purpose.

Exhibits 6-9, 20, 22-29, and 44 are memoranda or notices memorializing counseling or disciplinary actions against Moore. Each of these incidents of counseling or discipline are supported by affidavit testimony from Defendants Isaac or Cullen. (See Summ. J. Mot. Ex. 1, ¶¶ 7-16, ECF No. 43-4); (Summ. J. Mot. Ex. 19 ["Cullen Aff."], ¶¶ 3-5, 8-9, ECF No. 43-22). These exhibits are offered as evidence that Finan Center counseled or disciplined Moore several times and that notice of the same was given to her. These are facts with independent legal significance because they help establish a legitimate non-discriminatory reason for terminating Moore's employment.

Exhibit 32, a December 14, 2009 letter to Moore from Loney, corroborates Loney's affidavit testimony that she mailed to Moore FMLA information and forms. (See Summ. J. Mot. Ex. 4, ¶ 13, ECF No. 43-7). Exhibit 21, a July 15, 2009 memorandum to Moore, corroborates Cullen's testimony that a new call-off procedure had been provided to Moore in writing. (See Cullen Aff. ¶ 6). Exhibit 30, a September 3, 2009 Plan of Correction memorandum to Moore, corroborates Cullen's testimony that Moore was provided written notice of a plan to address her monthly notes being completed on time. (See id. ¶ 7).

9

Exhibit 5, the formal Position Description for the Art Therapist position at Finan Center, is offered to establish the evaluation criteria for Moore's position and the standards of expectation for her performance. Exhibit 18, DHMH's Absent Without Leave Policy ("AWOL Policy"), is offered to establish the existence of a policy regarding absences. Exhibit 31, Moore's "final performance evaluation and performance improvement plan" is offered to establish Moore's failure to meet the expectations of her employer and the standards used to measure and assess her job performance. Accordingly, exhibits 5-9, 18, 20-29, 30-32, and 44 are admissible.

Exhibits 11, 13-16, and 33-35 are offered to show either the effect on the listeners' state of mind or the then-existing state of mind of the declarant. These documents are non-hearsay or fit into a hearsay exception, thus the Court may consider them for any admissible purpose.

Exhibit 11 is an email between Loney and McCall-Smith discussing Moore's request for reasonable accommodations. This email is not offered for its truth but to show the alleged reasonableness in Loney's subsequent conduct of asking Moore for documentation from a medical provider to support her claimed disability.

Exhibits 13, 15, 16, and 34 are medical reports issued by Dr. Morris and Dr. Lyons, offered to show the effect these reports had on the stakeholders at Finan Center with respect to Moore's request

for accommodations. Exhibits 14 and 35 are letters from Loney to Dr. Lyons requesting an examination of Moore. These exhibits are offered to show Loney's motive and intent in requesting the examinations. Accordingly, exhibits 11, 13-16, and 34-35 are admissible.

Exhibit 33 is a December 17, 2009 email from Moore to Loney, Cullen, and Isaac, in which Moore is expressing her then-existing emotional state with respect to the reprimands she was receiving. Thus, exhibit 33 is admissible non-hearsay as proscribed by Rule 801(d)(2).

Finally, certain records of a regularly conducted activity fit into the business records exception to the hearsay rule as proscribed by Rule 803(6). The exception only applies if five criteria are satisfied:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed.R.Evid. 803(6)(A)-(E).

Exhibit 43 is Moore's timesheets for the period of December 16, 2009 through January 12, 2010. The proper foundation for the

admissibility of these records is attached as exhibit 45 to Defendants' Reply Memorandum. (See Defs.' Reply Mem. Supp. Defs.' Mot. Summ. J. and Resp. Opp'n Pl.'s Mot. Strike, or in the Alt., Mot. in Limine Ex. 45, ECF No. 50-1). Thus, exhibit 43 meets the business records exception to the hearsay rule.

For all of the foregoing reasons, Moore's Motion to Strike, or Alternatively, in Limine will be denied.

### 2.    Defendants' Motion to Strike

Defendants argue a majority of Kevin Gembarosky's affidavit should be stricken as hearsay, violative of the "best evidence rule," inadmissible lay opinion testimony, or lacking in personal knowledge. (See Defs.' Mot. Strike Certain Paragraphs of Kevin Gembarosky's Aff. ["Defs.' Mot. Strike"]).[6] In her response in opposition to Defendants' Motion to Strike, Moore attaches an Amended Affidavit of Gembarosky, and argues Defendants' Motion should be denied as moot. (See Pl.'s Resp. Opp'n Defs.' Mot. Strike ["Opp'n Defs.' Mot. Strike"] Ex. 1 ["Gembarosky Am. Aff."], ECF No. 52-1). Upon review of the Amended Affidavit, the Court concludes that while some of the contested testimony has been removed, much of the initial testimony remains and the merits of Defendants' Motion to Strike should be addressed.

---

[6]    Exhibit 5 attached to Moore's Opposition to Defendants' Motion for Summary Judgment is an affidavit by Kevin Gembarosky. (Pl.'s Resp. Opp'n Defs.' Mot. Summ. J. ["Response"] Ex. 5 ["Gembarosky Aff."], ECF No. 47-6).

Given that the challenged affidavit was submitted in opposition to a motion for summary judgment, it must comply with the requirements of Rule 56(c)(4) of the Federal Rules of Civil Procedure. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).[7] Rule 56(c)(4) makes clear that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). Thus, either the entire affidavit or improper portions therein that fail to comply with the requirements set forth in Rule 56(e) may be subject to a motion to strike. See Evans, 80 F.3d at 962 (finding that the district court properly struck those sections of an affidavit that it deemed to be hearsay, irrelevant, conclusory, or not based on personal knowledge).

Defendants argue paragraphs 7, 9, 10, 16, 17, 18, 21, 23, 24, 26, 27, 29, 32, 36, 39, 40, 52, 54, 55, 56, and 57 in their entirety, and portions of paragraphs 11, 28, 31, 35, 37, 38, 44, and 49 should be stricken because they consist of hearsay or purport to prove the content of writings that are required to be in

---

[7] Evans discusses the affidavit standards of former Rule 56(e) that are now set forth in Rule 56(c)(4). See Whittaker v. Morgan State Univ., 524 F.App'x 58, 60 (4th Cir. 2013) (citing Evans as support for a discussion concerning the affidavit standards of Rule 56(c)(4)).

evidence.[8] Gembarosky's Amended Affidavit omits paragraphs 18, 36, 54, 55, 56, and 57 in their entirety. As to the remaining paragraphs, Moore argues the declarations are not made for their truth but rather to show only what Gembarosky heard, was shown, was provided, reviewed, and/or read with respect to his role as Moore's confidant in matters related to this case.

Assuming Gembarosky's declarations are not made for their truth, and therefore are not hearsay, the evidence must be relevant. See Fed.R.Evid. 402 ("Irrelevant evidence is not admissible."). Evidence is relevant if it has any tendency to make a fact that is of consequence in determining the action "more or less probable than it would be without the evidence." Fed.R.Evid. 401. Materiality, with reference to evidence, means the evidence "goes to the substantial matters in dispute or has a legitimate or effective bearing on the decision of the same . . . ." United States v. De Lucia, 256 F.2d 487, 491 (7th Cir. 1958) (citing 31 C.J.S. Evidence §§ 159, 185, pp. 868, 906).

If Gembarosky's testimony is not offered for the truth of the matter asserted therein, what he heard, was shown, was provided, reviewed, and/or read with respect to his role as Moore's confidant in matters related to this case is neither material nor probative of whether Defendants are liable for violating Moore's rights. If

---

[8] Because Gembarosky's Amended Affidavit omits certain paragraphs, Defendants' argument with respect to the original Affidavit will be considered with respect to the corresponding paragraphs in the Amended Affidavit.

Gembarosky's testimony is offered for its truth, it constitutes inadmissible hearsay on issues of liability of the Defendants. Accordingly, the Court will strike paragraphs 7, 9, 10, 16, 17, 20, 22, 23, 25, 26, 28, 31, 37, 38, and 50 in their entirety, and portions of paragraphs 11, 27, 30, 34, 36, 37, 42, and 47 of the Amended Complaint.

Moreover, to the extent the testimony at issue purports to offer lay opinions, the testimony is prohibited because it is not helpful to determining a fact in issue. See Fed.R.Evid. 701 (lay opinion testimony is limited to opinions that are: "(a) rationally based on the witness's perception; (b) helpful to . . . determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge. . . ."). Accordingly, the Court will strike paragraphs 29, 32, 33, 36, 41, 42, 43, 44, and 53 of the Amended Complaint.

For all of the foregoing reasons, Defendants' Motion to Strike will be granted.

B.    **Motion for Summary Judgment**

Having disposed of the motions to strike, the Court will now review the Motion for Summary Judgment.

1.    **Standard of Review**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in the original).

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis, 249 F.3d at 265.

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings

and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984).

**2. Analysis**

**a. Failure to Accommodate and Wrongful Discharge Under the ADA**

Moore contends that Finan Center discriminated against her on the basis of her disability in violation of the ADA. Specifically, she argues Finan Center discriminated against her by wrongfully terminating her employment and denying her reasonable accommodations. Moore's failure to accommodate and wrongful discharge claims under the ADA, and her disability discrimination claim under the Rehabilitation Act[9] all fail as a matter of law because she cannot demonstrate that she is within the ADA's protected class.

The ADA prohibits a covered entity from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a) (2012). Accordingly, as a threshold issue, the

_____

[9] "[W]hether suit is filed . . . under the Rehabilitation Act or . . . under the ADA, the substantive standards for determining liability are the same." Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995).

Court must decide whether Moore is a qualified individual under the ADA. A qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8).

To resolve whether a person is a qualified individual, a court must consider whether that person is able to perform the essential functions of the job in question, and if not, whether the person could do the job with reasonable accommodation. Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir. 1993)).

The Court concludes that Moore is unable to perform the essential functions required of an Art Therapist II at Finan Center because she cannot meet the attendance requirements of the job. In Tyndall, the United States Court of Appeals for the Fourth Circuit concluded that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." Tyndall, 31 F.3d at 213. Notwithstanding Finan Center's flexibility in considering mitigating circumstances as part of its AWOL Policy, Moore does not dispute that she was absent from work 118 hours in 2007, 208 hours in 2008, and 411 hours in 2009. (See Jan. 2010 SMD Referral Letter at 3).

DHMH's Position Description for an Art Therapist identifies daily, weekly, and monthly interaction requirements with internal

18

staff and patients. (Position Description at 2-3). The Art
Therapist is responsible for creating patient treatment plans based
on assessments of her assigned groups and individual patients, and
for monitoring and documenting patients' progress. (Id. at 3). An
Art Therapist is required to make appropriate adjustments in the
treatment plans of her patients as necessary. (Id.). Moreover,
timeliness, thoroughness, consistent attendance, punctuality, and
functional participation are all listed as necessary for
satisfactory performance. (Id. at 8). Thus, regular and reliable
attendance is an essential function of the Art Therapist II
position, and Moore's demonstrated health problems preclude her
from satisfying that basic requirement.

Nevertheless, Moore may still be entitled to relief if she can
show that she could perform the essential functions of the job with
reasonable accommodation. "Even though a disabled employee is
unable to perform the essential functions of an employment
position, [her] termination may nevertheless be unlawful if the
employer has failed to reasonably accommodate the employee's
disability." Myers, 50 F.3d at 282 (citing Sch. Bd. of Nassau
Cnty., Fla. v. Arline, 480 U.S. 273, 287 n.17 (1987)). Moore
maintains Finan Center failed to reasonably accommodate her
disabling medical conditions by refusing her telework and
flexibility in her work schedule.

Among other things, to demonstrate a prima facie case of
failure to accommodate, a plaintiff must show she can perform the

19

essential functions of her job with a reasonable accommodation. See Fleetwood v. Harford Sys. Inc., 380 F.Supp.2d 688, 697 (D.Md. 2005) (citing Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001)) (laying out the elements of a claim for failure to accommodate). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "The term 'undue hardship' means an action requiring significant difficulty or expense, when considered in light of . . . the type of operation . . . of the covered entity." Id. § 12111(10). Reasonable accommodations may include job restructuring and part-time work schedules. Id. § 12111(9)(B).

In its 2008 Enforcement Guidance, The Americans With Disabilities Act: Applying Performance And Conduct Standards To Employees With Disabilities, the Equal Employment Opportunity Commission ("EEOC") discussed the extent of an employer's obligation to accommodate repeated instances of absenteeism. In pertinent part, the EEOC states:

> [E]mployers need not completely exempt an employee from time and attendance requirements, grant open-ended schedules (e.g., the ability to arrive or leave whenever the employee's disability necessitates), or accept irregular, unreliable attendance. Employers generally do not have to accommodate repeated instances of tardiness

20

or absenteeism that occur with some frequency, over an
extended period of time and often without advance notice.
The chronic, frequent, and unpredictable nature of such
absences may put a strain on the employer's operations .
. . .

The U.S. Equal Emp't Opportunity Comm'n, <u>The Americans With
Disabilities Act: Applying Performance And Conduct Standards To
Employees With Disabilities</u>, EEOC.gov,
http://www.eeoc.gov/facts/performance-conduct.html (last modified
on Jan. 20, 2011).

In Loney's January 4, 2010 follow-up evaluation request to Dr.
Lyons, she states:

> We work in a state psychiatric hospital, and can not
> [sic], by any means, allow staff to come and go as they
> need to. We have set schedules for ALL staff, as well as
> schedules with Ms. Moore, as the Art Therapist, and the
> patients that we serve here. We can not [sic] allow Ms.
> Moore to not follow our set guidelines due to her
> illness, nor can we allow her to work from home, as ALL
> of our staff has to be at the hospital to perform their
> jobs. We do not allow any staff this practice.

(Jan. 2010 SMD Referral Letter at 3) (emphasis in the original).
Moore alleges that her requests for telework and a more flexible
schedule were both accommodations that Finan Center granted to
other employees, but the Court finds nothing in the record that
supports this contention.[10]     (Am. Compl. ¶ 209, ECF No. 9).

---

[10] Moore alleges that sometime in October, 2009, Mr. Isaac told
her "We are not doing that. Telework is for good employees. I'm
not going to recommend YOU for that!" (Summ. J. Mot. Ex. 3 ["Moore
Aff."], ¶ 27, ECF No. 43-6) (emphasis in the original). While this
may imply that other employees were permitted to telework, there is

Furthermore, Moore asserts, in the EEOC charge of discrimination, that she was told "nobody in the facility can have the ability to flex their schedule to their needs." (Summ. J. Mot. Ex. 40, ECF No. 43-43). Additionally, Moore "concede[s] that there were not many people who received accommodations at the Finan Center . . . ." (Summ. J. Mot. Ex. 10, at 3, ECF No. 43-13). Thus, the Court concludes that an open-ended "work when able" schedule, such as the type Moore suggests as an accommodation, is not a reasonable accommodation and would impose an undue hardship on the Finan Center.[11]

Because Moore's attendance problems render her unable to fulfill the essential functions of her job with or without reasonable accommodations, the Court holds that Moore is not a "qualified individual" as required by the ADA. Only persons who are qualified for the job in question are protected under the ADA. See Wells v. BAE Sys. Norfolk Ship Repair, 483 F.Supp.2d 497, 506

---

nothing in the record that supports this inference in the face of Loney's statement in her re-evaluation letter to Dr. Lyons.

[11] An employer's "duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to [her] employer [her] disability and [her] desire for an accommodation for that disability." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346-47 (4th Cir. 2013). An employer cannot be held liable for failing to explore with an employee the possibility of a reasonable accommodation, however, unless the employee can identify a possible reasonable accommodation that could have been discovered in the interactive process. Id. at 347. Moore has not identified a possible reasonable accommodation that could have enabled her to meet the attendance requirements of the job. Therefore, Finan Center cannot be held liable for failure to accommodate on the grounds that it did not engage in the interactive process.

(E.D.Va. 2007) (citing <u>EEOC v. Stowe-Pharr Mills, Inc.</u>, 216 F.3d 373, 379 (4th Cir. 2000)) (explaining that a plaintiff is entitled to the ADA's protections only if she is a qualified individual), <u>aff'd</u>, 250 F.App'x 552 (4th Cir. 2007). Accordingly, Counts I, II, III, IV, and VI fail as a matter of law, and the Court will grant summary judgment in favor of Finan Center with respect to these counts.

### b. Retaliatory Discharge under the ADA

Viewing the facts in a light most favorable to Moore, the Court concludes that, while Moore is able to meet the minimal threshold to establish a prima facie case of retaliation, she cannot effectively rebut Finan Center's proffered legitimate reason for her termination. Thus, Moore's retaliatory discharge claim fails as a matter of law.

A plaintiff is not required to show that she is a "qualified individual with a disability" to establish a prima facie case for retaliation. 42 U.S.C. § 12203(a) (the ADA retaliation provision protects "any individual" who has opposed any act or practice made unlawful by the ADA.); <u>see also</u> <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 502 (3d Cir. 1997) ("An individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA."); <u>Baker v. Windsor Republic Doors</u>, 414 F.App'x 764, 777 n.8 (6th Cir. 2011) (same); <u>cf.</u> <u>Peters v. Jenney</u>, 327 F.3d 307, 320-21 (4th Cir. 2003) (citing precedent in other circuits indicating that Title VII retaliation claims may

be asserted in instances where the underlying claim of disability fails).[12]  The protected act is the showing of a good-faith request for reasonable accommodations.  <u>Peters</u>, 327 F.3d at 321.

The undisputed evidence shows that Moore requested accommodations on a number of occasions[13] and that she was ultimately terminated from her position.  Further, based on the uncontroverted allegations of statements made by Defendants Isaac and Cullen, a reasonable fact-finder could conclude that Moore's termination was precipitated by her insistence on being afforded accommodations.[14]

---

[12] "Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose-the prohibition of illegal discrimination in employment-courts have routinely used Title VII precedent in ADA cases."  <u>Fox v. Gen. Motors Corp.</u>, 247 F.3d 169, 176 (4th Cir. 2001).

[13] Finan Center argues Moore's requests for accommodations were not in good-faith because Moore admitted to not needing them.  This argument is meritless.  In support of its argument, Finan Center identifies a January 13, 2010 email between Moore and McCall-Smith (DHMH's ADA Coordinator), in which Moore writes, "I care about my job and I know that I am capable of my essential function, with or without accommodations.  Accommodations would help, however.  I never said I NEEDED them to do my job." (Summ. J. Mot. Ex. 41, ECF No. 43-44) (emphasis in the original).  When considered in context to the rest of her email, however, it is clear that Moore was in fact requesting accommodations, not denying the need for them.  Moreover, Finan Center admits that Moore requested several types of accommodations to assist in the performance of her job at various times.

[14] On August 21, 2008, Isaac allegedly leaned over Moore's chair and yelled, "What's wrong with you?! and [Y]ou have to tell me your disability!" (Moore Aff. ¶ 40) (internal quotation marks omitted).  On that same date, after disclosing her disability Isaac allegedly said, "I knew there was something wrong with you when I hired you.  I thought you were either a substance abuser, psychiatric patient or . . . the last one I thought of . . . brain-damaged." (<u>Id.</u> ¶ 42) (alterations in the original).  On January 8, 2010, Issac allegedly said "by asking for accommodations, you are

Once the plaintiff succeeds in establishing a prima facie case of retaliation, however, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action.  See Rhoads, 257 F.3d at 391-92 (discussing the burden-shifting framework of ADA retaliation claims).  Should the defendant carry this burden, the plaintiff then must have an opportunity to prove that the nonretaliatory reason offered by the defendant was a pretext for discrimination.  Id.

DHMH cited two overarching regulatory provisions for Moore's termination: 1) COMAR 17.04.05.03B(1), which provides, "That the employee is incompetent or inefficient in the performance of the employee's duty;" and 2) COMAR 17.04.05.03B(2), which provides, "That the employee is an individual with a disability who with a reasonable accommodation cannot perform the essential functions of the position." (Summ. J. Mot. Ex. 38, ECF No. 43-41).

With respect to COMAR 17.04.05.03B(1), Moore argues there exists a factual dispute as to whether the numerous performance evaluations and counseling memorandum were a pretext for her supervisor's discrimination.  Giving Moore the benefit of all reasonable inferences, the Court concludes that a contested issue of fact does exist as to the pretextual nature of the counseling memorandum and performance review.  The contested fact, however, is

_____

telling me that you can't do your job." (Id. ¶ 51).  On January 12, 2010, Cullen allegedly said, "You never should have been working here at all with THIS kind of problem.  No, you certainly can't work HERE.  You should have told us about this sooner." (Id. ¶ 89) (emphasis in the original).

not material because the Court will assume, for the purposes of summary judgment, that Moore satisfies all the skill, experience, education and other job-related performance criteria.

With respect to COMAR 17.04.05.03B(2), this ground for termination was a direct result of Dr. Lyons's January 11, 2010 Follow-Up Workability Evaluation. This evaluation focused on Moore's absenteeism and discussed the impact of her absenteeism on her job performance. (See generally Second Follow-Up Workability Evaluation). While Moore denied her on-the-job performance issues, she admitted to being "occasionally late for work." (See id. at 2). Furthermore, Moore admitted to missing many days of work related to two flu shots, a rib injury from a fight with her boyfriend, physician appointments, and symptoms secondary to stress and perceived harassment by her supervisor and upper management. (Id.). Moore indicated she could continue working in the Art Therapist II position but emphasized the need for a flexible schedule and telework.

It was based on this evaluation that Dr. Lyons found Moore "unable to effectively, consistently, and reliably perform the essential duties of an Art Therapist II, with or without accommodations." (Id. at 3). Pursuant to Dr. Lyons's report Finan Center began the termination process and cited COMAR 17.04.05.03B(2) as a second reason for Moore's termination.

In the Court's view, Dr. Lyons's conclusion, and thus COMAR 17.04.05.03B(2) as a grounds for termination, was based on Moore's

excessive absenteeism. Because the Court has already determined that Moore's attendance problems render her unable to fulfill the essential functions of her job with or without reasonable accommodations, Moore cannot effectively rebut Finan Center's legitimate reason for her termination. Accordingly, Moore's retaliatory discharge claim fails as a matter of law and the Court will grant summary judgment in favor of Finan Center with respect to Count V.

### c. Interference with Leave and Retaliation under FMLA

Moore argues Finan Center interfered with her exercise of FMLA rights by denying her the right to return to work following her qualified leave. The Court disagrees and will grant summary judgment in favor of Finan Center with respect to the same.

It is unlawful under the FMLA for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided" by the Act. 29 U.S.C. § 2615(a)(1) (2012). To sustain a cause of action under the FMLA, an employee must show both that her rights were obstructed and that she suffered prejudice as a result. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (discussing what an employee must prove to establish a violation of the FMLA). As applicable here, the FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . because of a serious health condition that makes the employee unable to perform the functions of [her position]." 29 U.S.C. § 2612(a)(1)(D).

Following a qualified leave, an employee is entitled to return to the same or an alternate position with equivalent pay and benefits. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.100(c) (2013). "[T]he FMLA, [however,] does not require an employee to be restored to [her] prior job after FMLA leave if [s]he would have been discharged had [s]he not taken leave." Mercer v. Arc of Prince Georges Cnty., Inc., 532 F.App'x 392, 396 (4th Cir. 2013) (quoting Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 547 (4th Cir. 2006)) (internal quotation marks omitted).

Moore contends Finan Center interfered with her FMLA rights by refusing to provide her with the necessary paperwork to file for FMLA leave and by failing to allow her to return to work upon the expiration of her FMLA leave. With respect to Finan Center's refusal to provide the necessary FMLA paperwork, Moore states that during 2009, Loney "repeatedly told [her] that [she] could not file for FMLA leave and refused to provide [her] with the necessary paperwork." (Moore Aff. ¶ 94). Further, Moore asserts that she "did not receive the necessary [FMLA] paperwork until a month after [her] hospitalization, after [she] complained in writing." (Id.). Moore's contentions, however, lack support in the record.[15] The

---

[15] These general averments do not set forth the specific facts necessary to raise a genuine issue for trial. Moore is unable to identify when she first requested the necessary FMLA paperwork and for which medical condition she believed she was entitled to FMLA leave. (Moore Dep. 101:16-19, Nov. 20, 2012, ECF No. 43-5). Despite not being able to identify when she first requested the necessary FMLA paperwork for the November 26, 2009 hospitalization,

only FMLA leave request appearing in the record was submitted and approved on January 26, 2010, two weeks after Dr. Lyons concluded that Moore was "unable to effectively, consistently, and reliably perform the essential duties" of her position. (Summ. J. Mot. Ex. 37, ECF No. 43-40); (see also Second Follow-Up Workability Evaluation at 3).

With respect to Finan Center's refusal to allow Moore to return from work, "[a]n employer has discretion to discipline or terminate the employment of an at-will employee . . . regardless of whether the employer's reason for terminating the employment was discovered while the employee is taking FMLA leave." Mercer, 532 F.App'x at 396. As discussed above, Finan Center has provided unrebutted evidence that it would have terminated Moore for "excessive sick leave" regardless of her FMLA leave.

---

she identifies December 17, 2009, as the date she complained, in writing, about not receiving the paperwork. (Moore Dep. 101:1-102:6). The "writing" she refers to in her deposition, however, is not part of the record.

Notwithstanding Moore's December 17, 2009 grievance, the record indicates that the FMLA paperwork was forwarded to Moore by mail on December 14, 2009. (Summ. J. Mot. Ex. 32 ["FMLA Certification Notification"], ECF No. 43-35).

> Rule 56 provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of Rule 56 is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.

Mercer, 532 F.App'x at 397 (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

"While timing is a relevant factor, it will rarely be independently sufficient to create a triable issue of fact." Id. at 397. Nonetheless, the Court will discuss the temporal proximity between Moore's termination and her FMLA leave. Moore began a continued absence for the period of time between November 20, 2009 and December 15, 2009. On December 14, 2009, Loney mailed to Moore FMLA information and forms in reference to this leave time. (See FMLA Certification Notification). Moore returned to work on December 16, 2009. After meeting with Moore the following day, Loney decided to refer Moore back to Dr. Lyons for a follow-up examination and to determine if there was anyway Moore could "realistically perform her job at any functioning level." (Jan. 2010 SMD Referral at 3). The reasons cited for the referral include "excessive sick leave usage, no available sick leave, [and] multiple occasions of AWOL . . . ." (Id. at 1).

Moore reported to Dr. Lyons for examination on January 7, 2010. On January 11, 2010, Dr. Lyons issued a report concluding that Moore was "unable to effectively, consistently, and reliably perform the essential duties of an Art Therapist II, with or without accommodations." (Second Follow-up Workability Evaluation at 3). On January 12, 2010, after reviewing Dr. Lyons's report, Cullen and Loney met with Moore and asked her to resign or be terminated. She was placed on administrative leave for two weeks and given until January 26, 2010 to render her resignation. Finan Center received and approved Moore's completed FMLA paperwork on

January 26, 2010. Moore remained on administrative leave until February 24, 2010, on which date she was terminated from her employment.

Thus, the decision to terminate Moore was effectively made on January 12, 2010, prior to Finan Center receiving and approving her FMLA request and after the expiration of Finan Center's 15-day statutory waiting period.[16] Even assuming that Finan Center was prohibited from considering the period between November 20, 2009 and December 15, 2009 as grounds for dismissal, Moore's 2009 absences still exceed 267 hours (or 33.375 business days). In considering her overall attendance record, the Court concludes that Finan Center has established a legitimate nondiscriminatory reason for her discharge. Accordingly, Moore's FMLA interference and retaliation[17] claims fail as a matter of law and the Court will grant summary judgment in favor of Finan Center with respect to Counts VIII and IX.

_____

[16] The employer must provide the employee with at least fifteen calendar days to submit medical certification of a serious health condition that precludes her from working. 29 C.F.R. § 825.305.

[17] FMLA retaliation claims are analyzed under the same burden-shifting framework as retaliatory discharge under Title VII. <u>See</u> <u>Mercer</u>, 532 F.App'x at 398 (discussing the burden-shifting framework of FMLA retaliation claims); <u>and</u>, <u>supra</u> note 13. The Court held that Finan Center has presented undisputed evidence that it terminated Moore's employment based on her excessive absenteeism, notwithstanding her approved FMLA leave. Accordingly, Moore cannot satisfy her burden to establish that Finan Center's proffered explanation for her termination is pretext for FMLA retaliation. Thus, Moore's FMLA retaliation claim fails as a matter of law.

### III. CONCLUSION

For the reasons given above, Moore's Motion to Strike, or Alternatively, in Limine (ECF No. 47) is DENIED. Defendants' Motion to Strike Certain Paragraphs of Kevin Gembarosky's Affidavit (ECF No. 51) is GRANTED, and Defendants' Motion for Summary Judgment (ECF No. 43) is GRANTED. A separate Order will follow.

Entered this 19th day of February, 2014

/s/
_____
George L. Russell, III
United States District Judge